Chief Judge Conway.
All 11 of the above-entitled actions arise out of an explosion which took place on the premises of Novadel-Agene Corporation, now known as Wallace & Tiernan, Inc., in Tonawanda, New York, on September 23,1953. Wallace & Tiernan, Inc., owns and operates a chemical plant on its premises. Each of the administratrices represents a decedent who was an employee of Wallace & Tiernan, Inc., at the time of the explosion and each of the plaintiffs in the personal injury actions was so employed at the time of the explosion.
In Action No. 1 (Putvin) the complaint, after identifying the parties, alleges that the defendants Joseph Davis, Inc., and Davis Refrigeration Co., Inc., were performing work and supplying materials at and around the chemical plant on September 23,1953; that the work was being performed by their agents, servants or employees in the course of their regular employment; that plaintiff’s intestate was lawfully upon the premises ; and that, as a result of the negligence of the defendants, plaintiff’s intestate sustained severe and painful injuries from which he died.
The allegation of negligence appears in paragraph “ eleventh ” of the complaint which reads: “ That as a result of the negligence and carelessness of the employees of the defendants herein, in the performance of their work, as aforesaid, and in the handling of the materials used in connection with such' work, and without any fault or lack of care on the part of the plaintiff’s intestate contributing thereto, a blast, explosion and fire resulted in and about said premises.”
In Action No. 2 (Holzman) the complaint, after identifying the parties, alleges that on or about September 23, 1953 the defendant Joseph Davis, Inc., was engaged in the performance of certain plumbing and steamfitting work at the chemical plant; that the plaintiff’s intestate on that day while in the employ of the Lucidol Division, Novadel-Agene Corporation, now known as Wallace & Tiernan Corporation, was lawfully and properly working upon the premises of that company and received serious injuries which resulted in his death.
The allegation of negligence appears in paragraphs “seventh” and “eighth” of the complaint which read:
‘ ‘ seventh : This accident to the plaintiff-intestate and the injuries and death resulting therefrom were caused solely by the *452 negligence of the defendants and without any negligence or want of care on the part of the plaintiff’s intestate in any wise contributing thereto.
‘‘ eighth : This accident to the plaintiff’s intestate and the injuries and death resulting therefrom were caused solely by the negligence of the defendants in the conduct of the plumbing, steamfitting, electrical and other work being done on the aforementioned premises on September 23rd, 1953, and in the failure of the defendants to supply the plaintiff’s intestate with a safe place to work.”
The record before us contains a stipulation by the parties that “ for the purposes of any appeal to the Appellate Division or to the Court of Appeals it will not be necessary to print the complaints and third-party complaints in any other actions than Action No. 1 and No. 2”. We assume, therefore, that the allegations in the complaints in the 10 other actions are the same as those in Actions Nos. 1 and 2.
The titles of the various actions disclose that the Buffalo Electric Co., Inc., was originally a party defendant along with Joseph Davis, Inc., and Davis Refrigeration Co., Inc. Like these two corporations, Buffalo Electric impleaded Wallace & Tiernan, Inc. In Action No. 1 Wallace & Tiernan, Inc., moved to dismiss the third-party complaint of Buffalo Electric. Special Term denied the motion but the Appellate Division unanimously reversed and granted it (3 A D 2d 805).
Similarly, in the case at bar, Wallace & Tiernan, Inc., moved to dismiss the third-party complaints of Davis. As with the Buffalo Electric third-party complaint, Special Term denied the motion but the Appellate Division unanimously reversed and granted it. In so doing, it rendered the following memorandum : ‘ ‘ The appellant concedes that the primary complaint in this action and the third-party complaint are identical with those passed upon by this court in Putvin v. Buffalo Elec. Co. (3 A D 2d 805). The several actions arise out of the same state of facts which relate to an explosion on the premises of the third-party defendant. In our prior decision we determined that in our view of the complaint the plaintiffs charge active and primary negligence against the defendant-third-party-plaintiff and recovery could only be had upon such proof. Therefore the defendant in a third-party action could not seek indemnification from the third-party defendant and its complaint was *453 dismissed. Upon, a reconsideration of our prior decision we adhere thereto.”
Before proceeding to a treatment of the precise issue here presented, we think it advisable to recall to mind certain basic principles and considerations concerning third-party practice.
Section 193-a of the Civil Practice Act, entitled “ Third-party practice; courts to which applicable ’ ’, provides, in part: “ 1. After the service of his answer, a defendant may bring in a person not a party to the action, who is or may be liable to him for all or part of the plaintiff’s claim against him * * (Emphasis supplied.)
It will be observed that this section, in terms, authorizes the service of a third-party complaint only on one not a party to the action, i.e., one not sued by plaintiff. It is fundamental, of course, that a plaintiff in a negligence action is free to choose his defendants. Should a plaintiff sue less than all of the tortfeasors actively responsible for his injury, no impleader is possible. This is for the reason that impleader will not lie in order to secure contribution among joint tort-feasors, since such a right only arises after joint judgment has been recovered against both of them and one has paid more than his share (Civ. Prac. Act, § 211-a; Fox v. Western New York Motor Lines, 257 N. Y. 305). If the plaintiff does not elect in the first instance to join several joint tort-feasors as codefendants, there is no right of contribution and, consequently, no right to implead pursuant to section 193-a of the Civil Practice Act.
The one sued has an indemnity action over against one not sued, hence, may implead the third party, pursuant to section 193-a, if the third party has contracted to indemnify the one sued, or if the liability of the one sued is predicated on passive negligence imposed by law and that of the third party is based on active negligence (see 2 Carmody-Wait, New York Practice, §§ 65, 66, 67, pp. 611-616).* As this court pointed *454 out in McFall v. Compagnie Maritime Beige (304 N. Y. 314, 327-328):
“ [Tjhere is a fundamental distinction between contribution and indemnity. The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution. In the absence of statutory provision one of several wrongdoers, who has been compelled to pay damages for the wrong committed, cannot obtain contribution from the others who participated in the commission of the wrong. Such is the rule recognized not only by the courts of this State (see, e.g., Fox v. Western New York Motor Lines, 257 N. Y. 305) but by the Federal courts (see Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 196 U. S. 217, 224).
# # #
“ The common-law rule denying contribution to joint tortfeasors has been partially abrogated in this State by the enactment of section 211-a of the Civil Practice Act which authorizes contribution if two conditions exists: (1) a joint money judgment against the tort-feasors, and (2) the payment by one tortfeasor of more than his prorata share thereof. (Fox v. Western New York Motor Lines, 257 N. Y. 305, supra.)
1‘ The right to indemnity, as distinguished from contribution, is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought. Where several tort-feasors are involved an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act.”
The right of a defendant to implead another, then, depends upon his being able to demonstrate a right to be indemnified by the one he seeks to implead. As stated in McFall (supra), where several tort-feasors are involved, an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one *455 who has been actively negligent. So it is that a claim over against a third person charging the third person with active negligence will be allowed if the original complaint can reasonably be interpreted as including an allegation of passive negligence on the part of the defendant (see, e.g., Monteverdi v. French Realty Corp., 274 App. Div. 945, where the defendant was charged with negligence, among other things, “in suffering ” a large quantity of combustible matter to accumulate on its property. This was held to allege passive negligence). Conversely, where the defendant is alleged to be guilty only of active as distinguished from passive negligence, impleader is improper as a matter of law, since an actively negligent tort-feasor is not entitled to indemnity (see, e.g., Messaro v. Long Is. R. R. Co., 274 App. Div. 939). If the then defendant is alleged to be guilty of both active and passive negligence, impleader of the person claimed to be guilty of active negligence is proper (see, e.g., Johnson v. Endicott Johnson Corp., 278 App. Div. 626).
We turn now to the case at bar. Plaintiff in Action No. 1 sued Joseph Davis, Inc., and Davis Refrigeration Co., Inc., and the plaintiffs in the other 10 actions sued Joseph Davis, Inc. They did not sue their employer, Wallace & Tiernan, Inc. It may be assumed that they did not sue the employer because the Workmen’s Compensation Law “ shall be exclusive of all other rights and remedies for injuries to employees or for death resulting from * * * injuries ” incurred in the course of employment (N. Y. Const., art. I, § 18). In serving the third-party complaint on Wallace & Tiernan, Inc., Davis seeks to shift the liability over to the plaintiffs’ employer thus making the employer liable indirectly in an amount which could not be recovered directly. There is nothing objectionable about that, however, for, in seeking a recovery over, Davis is not suing for the damage sustained by the employees but asserts its own right of recovery for breach of an alleged independent duty or obligation owed to it by the employer as indemnitor (McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 331, supra; Westchester Light. Co. v. Westchester County Small Estates Corp., 278 N. Y. 175). The objection raised as to the impleader of Wallace & Tiernan, Inc., is that the plaintiff has not pleaded facts which can be interpreted as anything other *456 than an allegation or claim that Davis was actively negligent. If that be so, no impleader is permissible for the reason that an actively negligent tort-feasor is not entitled to indemnity.
It is frequently difficult to determine whether a defendant’s negligence has been active. This may be attributed, in part, to the fact that “ either a fault of omission or one of commission may constitute active negligence ”. (McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 330, supra.) We think, however, that it is not so difficult to determine whether a defendant’s negligence has been passive. By that we mean that it seems to us that one cannot be guilty of passive negligence merely, if he has been guilty of a fault of commission. It is the omission or failure to perform a nondelegable type of duty (e.g., the duty of an owner of realty or a shipowner to furnish the injured party with a safe place to work), as distinguished from the failure to observe for the protection of the interests of another person that degree of care and vigilance which the circumstances justly demand, which constitutes passive negligence entitling one to indemnity (see McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 329-330, supra; Schwartz v. Merola Bros. Constr. Corp., 290 N. Y. 145; Tipaldi v. Riverside Memorial Chapel, 273 App. Div. 414, 418, affd. 298 N. Y. 686). As the cited cases show, the owner of the realty or ship who is under a nondelegable duty may be held liable to the one injured, but may then recover over against the one doing the work.
The complaint in Action No. 1 before us alleges that the defendants, who were performing work and supplying materials at and around the Wallace & Tiernan chemical plant, were guilty of negligence “in the performance of their work, as aforesaid, and in the handling of the materials used in connection with such work ’ ’. Clearly, such complaint charges the defendants with a fault of commission—negligence in the performance of their work. There is no suggestion in the complaint to the effect that defendants omitted to perform a nondelegable duty imposed upon them by law which would render them liable to plaintiffs as passive tort-feasors, but which would permit them to seek indemnity of Wallace & Tiernan, Inc., as the active and affirmative tort-feasor.
*457 In Action No. 2 the complaint alleges that the defendant Davis was engaged in the performance of certain plumbing and steamfitting work at the chemical plant, that the accident to plaintiff’s intestate was “ caused solely by the negligence of the defendants in the conduct of the plumbing, steamfitting, electrical and other work being done on the aforementioned premises on September 23rd, 1953, and in the failure of the defendants to supply the plaintiff’s intestate with a safe place to work.”
This complaint, like the complaint in Action No. 1, charges the defendant with active negligence — with a fault of commission, negligence in the performance of its work. At first blush, it might seem that it charges passive negligence insofar as it alleges that defendant Davis was guilty of negligence ‘1 in the failure of the defendants to supply the plaintiff’s intestate with a safe place to work.” However, upon analysis it will be seen that, taken in the context of the complaint, this is not an allegation of passive negligence. There was no relationship of master and servant or employer and employee between plaintiff and defendant Davis. And, if there was, then the failure to furnish plaintiff with a safe place to work would constitute active negligence. Nor is the defendant Davis the owner of a building who has a nondelegable duty to supply contractors’ workmen with a safe place to work. Bather, the defendant is an independent contractor working in a building where the plaintiff was employed. Thus, in legal contemplation, plaintiff and defendant were strangers. Defendant did, of course, owe plaintiff a duty not to make plaintiff’s place to work unsafe by the manner in which it performed its work on the premises of plaintiff’s employer. Undoubtedly this is the sense of plaintiff’s allegation. In a word, defendant is being charged with negligence in the performance of its work on the premises of Wallace & Tiernan — active negligence.
It is true, as appellant Davis argues, that there is a right of recovery over, against a primary wrongdoer whose misconduct has created a dangerous condition, by one who has been held liable for failure to discover and remedy the danger (see Ruping v. Great Atlantic & Pacific Tea Co., 283 App. Div. 204, 206). But, as the Appellate Division pointed out in dismissing the complaint of Buffalo Electric (3 A D 2d 805): *458 “ The plaintiffs make no claim that the defendant-third-party plaintiff negligently failed to discover and guard against a dangerous condition created by the third-party defendant. They make no claim that the defendant-third-party plaintiff had knowledge or notice of any dangerous condition created by the third-party defendant and negligently failed to guard against it. Moreover, the defendant-third-party plaintiff disclaims knowledge or notice, actual or constructive, of any dangerous condition created on the premises by the third-party defendant.” The reason for disclaiming such knowledge is that the one seeking indemnity may be barred from recovering from the creator of the danger if after discovery of the danger he has acquiesced in the continuation of the condition (see Ruping v. Great Atlantic & Pacific Tea Co., 283 App, Div. 204, 206, supra).
Defendants make much of the McFall case (cited supra). They argue, relying on language in that case, that the factual disparity between the alleged delinquency of Davis and that of Wallace & Tiernan is so great that it is just to conclude that any fault claimed by plaintiff against Davis is only passive negligence.
Even a casual reading of the McFall opinion will reveal that defendants can draw no comfort from it.
There, we were not faced with the question of whether the primary complaint contained allegations which would warrant the defendants in impleading a third person. The case came to us after trial and we were concerned with questions of proof. The plaintiff, a longshoreman in the employ of Transoceanic Terminal Corporation, had been overcome by carbon tetrachloride fumes while working aboard the cargo vessel S. S. Stavelot. The plaintiff had a recovery against the Compagine Maritime Beige, as bareboat charterer of the vessel, and the Dow Chemical Company, the manufacturer and shipper of the carbon tetrachloride. Belgian Line sought a recovery over against Dow and Transoceanic (plaintiff’s employer which had loaded the drums of carbon tetrachloride) and Dow sought a recovery over against Transoceanic, In the course of the opinion we said (304 N. Y. 330): “ The evidence earlier outlined shows that Belgian Line was guilty of a fault of omission whereas Transoceanic, in negligently handling the drums, and Dow, in supplying inadequate drums, were guilty of faults pf *459 commission [case cited]. While that is not always determinative, since either a fault of omission or one of commission may constitute active negligence, it seems to us that the factual disparity between the delinquency of Transoceanic and Dow and that of Belgian Line is so great here that the jury was justified in concluding that Belgian Line’s fault of omission was only passive negligence.”
All we were saying there was- that the jury was justified in finding that the Belgian Line, the charterer of the boat, which had a nondelegable duty to furnish longshoremen working on the vessel with a safe place to work, was guilty of passive negligence only. We have already pointed out that defendants here do not stand in the position of a shipowner or boat charterer or owner of realty. On the contrary, their position is like that of Transoceanic which was doing the work on board the vessel. Transoceanic was held to be actively negligent.
Point II of Davis’ brief reads: “ Assume that the plaintiff has made the following offer of proof: during the course of their work, Davis failed to discover the existence of dangerous fumes and take suitable precautions. An objection is made. Would the trial judge sustain or overrule the objection? ”
Under this point Davis says: “ We believe that if a trial judge were required to pass upon the offer of proof illustrated in Point II above, he might be inclined to receive the proof.” (Brief, p. 25, emphasis supplied.) By raising this -point and employing the equivocal language that it does, Davis seems to recognize that no such proof can properly be admitted under the language of the primary complaints. In any event, the question of what a trial court might do in these cases concerning the admission of such evidence is beside the point. The only pertinent question is what proof can properly be admitted into evidence under the language of the primary complaints. We may not speculate as to the course a Trial Judge might follow. By their complaints the plaintiffs are limited to proof of affirmative acts of negligence on the part of Davis. True, if there is a variance between proof and pleadings, plaintiffs may move to conform the pleadings to the proof. The question here, however, relates to the pleadings only.
In its final point Davis complains of the fact that the judgment entered on the order of the Appellate Division declares *460 that the third-party complaints are dismissed “ with prejudice The quoted words do not appear in the order of the Appellate Division dismissing the third-party complaints. Davis asks that the judgment be modified by striking out the said words.
By its memorandum and order all that the Appellate Division determined was that the third-party complaints failed to state a cause of action. That is not a determination on the merits (Civ. Prac. Act, § 482) and it can hardly be argued that the words “ with prejudice ”, added to the Appellate Division determination by the attorneys for Wallace & Tiernan when they entered the judgment on the order of the Appellate Division, were intended t© mean “ on the merits ”, inasmuch as the case has not yet reached the trial stage. Bather, the words ‘ ‘ with prejudice” are the antonym of “without prejudice ” and, in the posture of the actions before us, can mean no more than that Davis can serve no further or amended third-party complaints in these actions as the plaintiffs’ complaints now stand. No doubt the words “with prejudice” are gratuitous and superfluous, for no further or amended third-party complaint can be served by Davis in the absence of specific grant by the Appellate Division of the right to plead further. However that may be, the words “ with prejudice ” merely carry out the sense of the Appellate Division order and, so, need not be stricken from the judgment.
The judgment should be affirmed, with costs.
Judges Desmond, Dye, Fuld, Froessel and Burke concur with Chief Judge Conway; Judge Van Voorhis dissents and votes to reverse and to deny the motion upon the ground that it is premature to dismiss the third-party complaint before it is known upon what basis recovery, if any, may be awarded at the trial to the original plaintiff against the third-party plaintiffs.
Judgment affirmed.

 It should also be noted that under the provisions of section 264 of the Civil Practice Act any party to the action who claims that any other party to the action is, or may be, liable to him for all or any part of the claim asserted against him may have such question determined in the same action, where all of the matters are properly determinable in one action, and provided such determination will not delay a judgment in the main controversy. Thus, a cross complaint may be asserted to enforce a right of indemnity based either on an express agreement or a common-law liability (see 4 Carmody-Wait, New York Practice, § 79, p. 424).